IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEDJ/THREE C's, Inc., | : | |
| UNITED COOLAIR CORP., | : | |
| NEIL R. TUCKER and | : | Case No. 4:CV-05-2427 |
| JEFFREY E. KOSER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Judge McClure |
| v. | : | |
| | : | |
| DEPARTMENT OF DEFENSE, | : | |
| Department of the Army, | : | |
| Procurement Fraud Branch, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

July 24, 2006

**BACKGROUND:**

On October 21, 2005 an Army Suspension and Debarment Official decided

pursuant to Federal Acquisition Regulation (FAR) section 9.406 to debar the

plaintiffs from participating in government contracts until March 10, 2008.  On

November 21, 2005, plaintiffs filed a complaint in the Middle District of

Pennsylvania asserting that the Army's decision was not established by a

preponderance of the evidence as to the plaintiffs and as a result the decision of the

Army Suspension and Debarment Official was arbitrary, capricious, an abuse of

1

discretion, and otherwise not in accordance with existing law.  The plaintiffs

request in their complaint that we "set aside the debarment decision and terminate

the debarred status of the Plaintiffs."  (Rec. Doc. No. 1, at 3.)  Plaintiff's complaint

is an appeal of the final administrative decision.  Defendants filed an answer, and

following an initial case management conference, filed a certified copy of the

Administrative Record. (Rec. Doc. No. 8.)[1]  At that conference we set forth a

briefing schedule which directed plaintiffs to file a brief in support of their appeal

and defendants to file a brief in opposition.

On June 22, 2006, plaintiffs filed their brief in support of their appeal

captioned "Brief on Behalf of WEDJ/Three C's Inc., United Coolair Corp., Neil R.

Tucker and Jeffery E. Koser in Support of Administrative Review of the Order of

Debarment Dated October 21, 2005."  (Rec. Doc. No. 12.)  On July 17, 2006,

defendant filed their brief in opposition captioned "Defendant's Opposition to

Plaintiff's Motion for Judgment on the Administrative Record and Defendant's

Cross Motion for Judgment Upon the Administrative Record."  (Rec. Doc. No.

15.)[2]  The appeal is now fully briefed and ready for our ruling.  For the following

_____

[1]We note our disappointment with the lack of standardized annotation and collation of the record.

[2]By earlier court order we directed parties to only file briefs in support and in opposition to the appeal.  Therefore, there are no motions currently before the

reasons we will affirm the decision of the Army Suspension and Debarment

Official.  Final judgment will be entered in favor of the defendant and against the

plaintiff.

**DISCUSSION:**

## I.  Standard of Review under Administrative Procedure Act

A final decision by the Department of the Army to debar a contractor from

participating in government contracts pursuant to Federal Acquisition Regulation

section 9.406, is subject to review in a district court under the Administrative

Procedures Act.  See Shane Meat Co. Inc. v. U.S. Dep't of Defense, 800 F.2d 334,

336 (3d Cir. 1986); 5 U.S.C. § 704.  When a district court reviews an agency's

decision, the scope of the review is limited, even in the context of summary

judgment.  Yeboah v. U.S. Dep't of Justice, 345 F.3d 216, 221 (3d Cir. 2003).

Under the Administrative Procedures Act the district court reviews the agency's

decision to determine whether it was  "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

When a court reviews an administrative decision it is generally limited to the

administrative record.  Marshall v. Lansing, 839 F.2d 933, 943-44 (3d Cir. 1988).

---

court.  The matter has been fully briefed as if there were cross-motions for
summary judgment on the record.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Prometheus Radio Project v. F.C.C., 373 F.3d 372, 389 (3d Cir. 2004) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)).  The agency still must demonstrate that it has examined relevant evidence and that there is a "rational connection between the facts found and the choice made."  Id. at 390 (quoting State Farm, 463 U.S. at 43).

## II.  Facts

The government provided a statement of material facts supported by citations to the administrative record, which are undisputed by the plaintiffs.  We recite those facts here.

WEDJ/Three C's Inc. (WEDJ) builds Environmental Control Units (ECUs) for military applications.  Their ECUs function as air conditioners, and are intended to cool military personnel and electronic equipment.  WEDJ has built ECUs for Navy LCAC Hovercraft, Army Radar Command and Control Shelters, and Army Patriot Missile Control Shelters.  WEDJ is a sister company to United Cool Air.  WEDJ Owner/President Neil R. Tucker also owns United Cool Air.

On April 8, 1998, WEDJ was awarded contract #DAAB07-98-C-E502 by the Army.  This contract called for WEDJ to build approximately 42 ECUs for use

4

in Patriot Missile System Command and Control Shelters.  The ECUs, rated at

24,000 British Thermal Units Per Hour (BTUH) output, were referred to by WEDJ

as the "24K units."  The 24K units were designed to operate as air conditioners in

Patriot Missile Shelters in a desert environment.  Mr. James Morrison was the

Project Engineer for the Army 24K Project.  The Army paid WEDJ $851,693

under this contract.

WEDJ also built ECUs for the Navy, pursuant to numerous

contracts/delivery orders issued by the Defense Logistics Agency (DLA).  These

ECUs were built for use in Navy LCAC Hovercraft.  These ECUs were referred to

by WEDJ as the "Textron" units.

The governing contracts specifically incorporated a Federal Acquisition

Regulation (FAR) clause which expressly obligated WEDJ to obtain Government

approval prior to substituting surplus components.  WEDJ never received

Government permission to utilize surplus parts in any of the ECUS.  But, contrary

to the FAR, WEDJ sometimes utilized surplus compressors in the Navy LCAC

Hovercraft "Textron" units.

After building the Army 24K ECUs, WEDJ began testing several of the First

Article 24K units.  The First Article Test plan was written by Jeffrey Koser and

General Manager Vincent Bertucci.  The contract required each unit to run at least

1,000 consecutive hours.  WEDJ was required to report any malfunctions or

failures to the Army.  If more than one malfunction occurred during testing, then

the entire test would be considered a failure.

During First Article testing several units did not properly perform.  To cover

up the problem WEDJ falsified the test results.  Falsification of the test data was

performed by project engineers Bernard Adebayo-Ige and James Morrison.

The scheme to falsify the test results was executed daily by the project

engineers.  Adebayo-Ige would obtain test data results from a computer that was

monitoring the testing and recording the results.  That data indicated that the First

Article units were failing the test.  Adebayo-Ige would then give the data to

Morrison who would make written changes to the data to make it falsely appear

that the units were testing successfully.  Morrison then instructed Adebayo-Ige to

put the false data into the First Article Test report in place of the original data.

In addition to the test data problems several First Article Test units

experienced compressor failures during testing.  These compressor failures

invalidated the testing regimen.  WEDJ was required to notify the Government of

these failures, and repeat the 1,000-hour testing cycle from the beginning, but

WEDJ did not notify the Government, nor did it repeat the testing.  Instead, WEDJ

replaced the failed compressors in the First Article Test units with different

compressors.  The testing was then continued from that point as if no failures had ever occurred.  Morrison was one of the managers who made the decision to switch out the failed compressors and directed another WEDJ employee to perform the switch.

Koser helped prepare the First Article Test report.  WEDJ submitted the falsified First Article Test report to the Army with false test data and with the indication that there were no compressor failures.  Upon submitting the test report, WEDJ falsely certified that the testing was performed in accordance with the contract terms.  Koser knew the report contained falsified or omitted material information.

The investigation that discovered WEDJ's falsified records was conducted jointly by the Naval Criminal Investigative Service ("NCIS"), the Army Criminal Investigative Division ("CID"), and the Defense Criminal Investigative Service ("DCIS").

On March 11, 2005, the Army sent Notices of Proposed Debarment to the plaintiffs.  All of the notices were received no later than March 21, 2005.  On July 7, 2005, the Suspension and Debarment Official ("SDO") held a hearing in which Tucker, Koser, and their Counsel were provided the opportunity to address the proposed debarment and offer any evidence in mitigation.  In July of 2005,

following the hearing, the plaintiffs submitted matters in mitigation entitled a

"Supplemental Submission for the Record" which was labeled as a "Post Hearing

Submission."

The SDO issued his decision and supporting memorandum, which is the

subject of this appeal, on October 21, 2005.  Section two of the supporting

memorandum sets forth matters in opposition and mitigation to the debarment.

That section spans three (3) pages and sixteen (16) paragraphs.  The SDO found

that WEDJ, United Cool Air, Tucker as president and owner of WEDJ, Koser as

the contract administrator, and Morrison as the project engineer had experience in

Government contracting and that it was reasonable to believe that they would seek

contracting opportunities in the future.

The SDO found that WEDJ may be debarred pursuant to both 9.406-2(b)(i)

and FAR 9.405-2(c).  The SDO found that a preponderance of the evidence

established that WEDJ intentionally falsified reliability test results during First

Article testing of Army air conditioners.  The SDO found that this conduct

constituted a serious violation of the terms of a Government contract, and was of

such a serious and compelling nature that it affects the company's present

responsibility as a Government contractor.

The SDO also found that WEDJ may be debarred because a preponderance

of the evidence established that the company used surplus compressors in air

conditioning units built for the Navy.  The SDO explained that "even if accidental,

WEDJ's FAR noncompliance was extremely negligent and careless, and is of such

a serious or compelling nature that it affects the company's present responsibility

to be a Government contractor."  (Rec. Doc. No. 8, SDO Mem., at 8.)  The SDO

also found that the falsification of test results and the substitution of surplus parts

by WEDJ employees was imputed to WEDJ pursuant to FAR 9.406-5(a).  The

SDO found that United Cool Air was an affiliate of WEDJ under FAR 9.403 and

therefore the debarment of WEDJ would include a debarment of United Cool Air

pursuant to FAR 9.406-1(b).

The SDO found that Tucker could be debarred pursuant to FAR 9.406-5(b)

because he was the sole owner and president of WEDJ and as such he had a reason

to know about his company's improper conduct.

The SDO found that Koser could also be debarred under FAR 9.406-5(b)

because he was the contract administrator on the contract where the test results

were falsified.  Further, the SDO found that two employees directly implicated

Koser in the falsification of test results and therefore he could also be debarred

under FAR 9.406-2()(1)(i) and FAR 9.406-2(c).  The SDO found that the

preponderance of the evidence demonstrates that Koser committed a serious

violation of the terms of a Government contract, and that he committed misconduct of such a serious nature that it affects his present responsibility as a Government contractor.

The SDO explained in his memorandum that WEDJ had submitted evidence of remedial measures it had taken to decrease the likelihood of future misconduct. The SDO specifically considered that evidence.  The SDO determined that in spite of that evidence the question of institutional control remained because Tucker would still be the sole owner and president of both WEDJ and United Cool Air. The SDO further determined that even if Tucker was misled by dishonest WEDJ employees, the fact that he hired them demonstrated poor business judgment and undermined his present responsibility as a Government contractor.

The SDO ultimately concluded that the facts and circumstances of the case warranted debarment of plaintiffs from October 21, 2005 through March 10, 2008. He found that their debarment was in the public interest and for the Government's protection.

### III.  Plaintiffs' Arguments on Appeal

Plaintiff's brief in support of their appeal raises a series of specious arguments.  None of these arguments demonstrates that the October 21, 2005 decision of the Army Suspension and Debarment official was arbitrary or

capricious.  We now address each argument in turn.

### A.  Plaintiffs' Argument Regarding Evidence of Lack of Knowledge

Plaintiffs' first argument is that plaintiff Tucker's medical records indicated that during the time frame of the complained conduct and irregularities he was being treated with a variety of medications and that he was therefore unaware of what was going on with his company.  Plaintiffs are attempting to reargue an issue that the SDO plainly considered in his memorandum.  At section 2 paragraph (h) of the SDO's October 21, 2005 memorandum, the SDO notes Tucker's argument regarding medication.  In his findings and conclusions at section 4 paragraph (g) of the decision the SDO noted that Tucker, as sole owner, company president, and only officer of WEDJ may be debarred pursuant to FAR 9.406-5(b).  The SDO noted that because of his position in the company Tucker had reason to know about WEDJ's improper conduct, and the company's misdeeds were imputed to him.  Plaintiffs have made no argument as to why the SDO's decision in this paragraph was arbitrary or capricious.  The SDO considered Tucker's medical condition and testimony regarding the same as it was briefly discussed under the Matters in Opposition and Mitigation section of the memorandum.  The argument is particularly weak, as the record indicates that Tucker testified at the hearing that "I had been treated with drugs, but I still should have been more aware of what was

going on." (Rec. Doc. No. 8, Hearing Tr. at 115.)

We agree with defendant that plaintiffs are requesting us to sit in the shoes of the SDO and judge the facts differently.  That is not our role under the Administrative Procedures Act.  <u>Citizens to Protect Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971). Plaintiffs' argument on this point lacks merit.

### B.  Plaintiffs' Argument Regarding Changes in FAR Clause

The next argument in plaintiffs' brief in support of their appeal is that the FAR clause regarding "new materials" changed over the years from (1) allowing surplus parts, to (2) allowing surplus parts only with the permission of the contracting officer, to (3) prohibiting surplus parts entirely.  The brief does not provide any analysis as to why this fact supports a finding that the SDO's decision was arbitrary or capricious.  The SDO did not ignore this fact, as it was noted by him under the mitigating factors at section 2 paragraph (l) of his October 21, 2005 decision.

### C.  Plaintiffs' Brief Argument Regarding Evidence of Faulty Compressors

Plaintiffs next argument is contained in a single sentence.  "There was no evidence that these compressors were faulty in any respect." (Rec. Doc. No. 12, at 7.)  We agree with defendant that this claim misses the mark as it is undisputed that WEDJ used surplus parts when they were required to use new parts.  Even if this

12

assertion was true, we agree with defendants that is unclear how plaintiffs assert that this makes the SDO's decision arbitrary and capricious.

### D.  Plaintiffs' Argument Regarding the Opinion of the Prime Contractor on the Navy Contract

Next, plaintiffs argue that Textron Marine and Land Systems, the prime contractor on the Navy contract involving WEDJ, expressed satisfaction with WEDJ's work under those contracts.  The SDO noted this under section 2 of his memorandum at paragraphs (j) and (k).  Again, we agree with defendant that plaintiffs wish for us to sit in the shoes of the SDO and substitute our decision for the decision of the SDO.  Plaintiffs have not argued how the SDO acted arbitrary or capriciously.

### E.  Plaintiffs' Argument Regarding Lynda Scanlon's Credibility

Plaintiffs then return to an argument related to plaintiff Tucker's and plaintiff Koser's personal knowledge of the misconduct committed by employees of WEDJ.  As we have already addressed Tucker was found to have imputed knowledge at section 4 paragraph (g) of the October 21, 2005 decision pursuant to FAR 9.406.5(b).  Plaintiffs have not demonstrated how the SDO's decision was arbitrary or capricious.  That SDO applied that same provision, FAR 9.406.5(b), to Koser at section 4 paragraph (h) of his October 21, 2005 decision, because he found by a preponderance of the evidence that Koser was in charge of the Army

13

24K contract and helped develop the First Article Test plan.  The SDO concluded

that "Koser had reason to know about WEDJ's falsification of the First Article test

results, and the company's misconduct is imputed to him."  The SDO then noted

that two separate employees directly implicated Koser.  Plaintiffs dispute that two

employees implicated Koser by selectively citing to Morrison's interview

statement contained at tab 15 of the administrative record.  We agree with

defendant that Morrison's statement plainly states "MORRISON said that all of the

people that signed the report would have known that it contained incorrect

information."  (Rec. Doc. No. 8, Tab 15, at 4.)  As Koser signed the report he was

directly implicated.   Plaintiffs have failed to demonstrate that the SDO's decision

on the imputation of knowledge to Koser and Tucker was arbitrary or capricious.

### F.  Plaintiffs' "Hobson Choice" / Institutional Control Argument

Plaintiffs' next argument is wholly without merit.  Plaintiffs assert that the

findings and conclusions of the SDO placed Tucker in an untenable position.

Plaintiffs summarily state: "Tucker is criticized for not doing a better job of

managing his affairs, and then, when he takes the steps necessary to do so, the

issue of institutional control is raised so that no real alternative exists under the

analysis to avoid debarment."  (Rec. Doc. No. 12, at 12.)  Plaintiffs summarily

assert that "[c]learly this type of analysis yields arbitrary and capricious result, and

therefore, should be set aside." (Rec. Doc. No. 12, at 12.) We disagree.

The SDO did not act in an arbitrary and capricious manner. The SDO noted that because of his position in the company, Tucker had reason to know about WEDJ's improper conduct and the company's misdeeds were imputed to him. See FAR 9.406.5(b). The paragraphs in the SDO's memorandum at paragraphs (j), (k), and (l) of section 4 indicate that SDO considered the mitigation evidence, but Tucker's own explanation that he hired a cast of dishonest or negligent characters was not found to relieve him of his obligation to properly supervise WEDJ's government contracts. The SDO did not act arbitrarily or capriciously in making this decision.

### G. Plaintiffs' Argument that the SDO Mischaracterized Remedial Measures as Relatively Recent

Plaintiffs' final argument is also without merit. Plaintiffs assert that the SDO mischaracterized WEDJ's remedial measures as relatively recent. We agree with the defendants that the evidence in the administrative record only contains remedial measures found in the post-hearing submissions dating from July 2005.[3] The SDO's decision was in October 2005 and his characterization of the measures

_____

[3]Tucker did testify at the hearing that he hired different quality control people at some time after December of 2002 when he "assumed the general management role." (Rec. Doc. No. 8, Hearing Tr., at 131.)

as relatively recent was correct.  It was certainly not arbitrary or capricious.  It was

plaintiffs' responsibility to have information in the administrative record

supporting an earlier implementation of remedial measures, if they were indeed

implemented on an earlier date.  Plaintiffs' argument is again without merit.

**CONCLUSION:**

The October 21, 2005 decision of the Army Suspension and Debarment

official was not arbitrary or capricious.  A separate order will issue entering final

judgment in favor of the defendant and against the plaintiffs.


                        __ s/ James F. McClure, Jr.____
                        James F. McClure, Jr.
                        United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WEDJ/THREE C's, Inc.,          :
UNITED COOLAIR CORP.,      :
NEIL R. TUCKER and          :     Case No. 4:CV-05-2427
JEFFREY E. KOSER,           :
                              :
          Plaintiffs,     :
                              :
      v.                   :
                              :
DEPARTMENT OF DEFENSE,   :
Department of the Army,           :        Judge McClure
Procurement Fraud            :
Branch,                      :
                              :
          Defendants.   :

## O R D E R

July 24, 2006

For the reasons set forth in the accompanying memorandum,

1.  The October 21, 2005 decision of the Army Suspension and Debarment

Official was not arbitrary and capricious, and is affirmed.

2.  The clerk is directed to enter final judgment in favor of the defendant and

against the plaintiffs and to close the case file.

                                            _____s/ James F. McClure, Jr._____
                                            James F. McClure, Jr.
                                            United States District Judge